**WICKHAM, Plaintiff-Appellant v. UPPER ARLINGTON (City), Defendant-Appellee.**

Ohio Appeals, Second District, Franklin County.

No. 3522.   Decided November 9, 1942.

164

Benj. F. Levinson, Columbus, for plaintiff-appellant.
Lawrence B. Stanley, Columbus, for defendant-appellee.

## OPINION

By BARNES, J.

The above-entitled cause is now being determined as an error proceeding by reason of plaintiff's appeal on questions of law from the judgment of the Court of Common Pleas of Franklin county, Ohio.

Plaintiff claims damages against the defendant city for personal injuries and damage to his automobile on account of the claimed negligence of the defendant in not guarding Asbury Drive where it terminated at the corporation limits.

It appears from the pleadings that Asbury Drive is a duly dedicated street within the municipality of Upper Arlington, running in a general northerly and southerly direction. Its northerly terminus

is at the corporation line. The improved portion of the street was approximately 27 feet in width, with a black top paving and gutters, and was in excellent condition.

The Arlington Ridge Realty Company owned several acres of ground immediately north of the city of Upper Arlington, which it had platted. After the same was duly approved by the County Commissioners such plat was filed with the County Recorder. As platted Asbury Drive continued north from the city limits of Arlington to the northerly boundary of the plat.

This subdivision of the Arlington Ridge Realty Company was platted in the early spring of 1941. At the time of the platting the streets and alleys were on paper and very few, if any, improved. This was particularly true of Asbury Drive as extended. During the early spring and summer of 1941 the Realty Company made excavations on Asbury Drive for a distance of approximately 200 feet and then turned on Abington Road. At first this excavation was particularly a borrow pit for procuring dirt to make fills in other parts of the subdivision. At all times it was usable by the traveling public as a mud road. Asbury Road in the new subdivision started at the city corporation line at a higher elevation than the Asbury city street. Gradually it was cut down and by the latter part of September, 1941, was practically to a grade some 8 inches below the finished street within the city limits. This 8 inches was intended for the buildup with stone and paving material so as to effectuate a completed street on the same grade as was Asbury Road within the city limits.

It is the claim of the plaintiff that the Realty Company in making its excavation left a drop-off at the end of the pavement of from 12 to 15 inches. The claimed negligence of the city of Upper Arlington is that knowing that this abrupt drop from the end of the street paving existed, it failed to guard or warn against such dangerous condition, and that it was in such close proximity to the city street that the public, in the exercise of ordinary care, were likely to be injured.

Plaintiff claims that about 1:30 A. M., on Sunday, while driving on Asbury Road, being a street with which he was not acquainted and at a speed of about 25 miles per hour, the night being damp and foggy, he suddenly came to this mud road, and when about 25 or 40 feet therefrom attempted to slow down, but inadvertently probably missed the brake and put his foot on the excelerator, and when the front wheels of his car reached the end of the pavement it dropped down with such violence as to throw him against the steering wheel, knocking out six teeth, breaking a dental plate, fracturing his jaw, breaking a bone in his kneecap and rendering him unconscious. It was indicated that the car continued on in a straight line a distance of about 200 feet and then plowed into a bank of dirt about 3½ to 4

feet high, doing considerable damage to the car. Plaintiff says that he quickly recovered consciousness, with difficulty extricated himself from his automobile and walked back to a residence where he aroused the occupants and secured first aid, and was taken in a cruiser which had been called to the University Hospital, where he had a period of treatment.

No one saw the accident but the plaintiff.

Defendant in its answer denies that any condition existed at the end of Asbury Road as claimed by plaintiff. It admits that the Realty Company was making improvements on a certain street by excavations within its subdivision. It denies that it had any knowledge that the Realty Company had at any time excavated this Asbury Road below the street level at the north corporation line. It also denies the allegation that conditions were such that it should have known of any claimed condition there existing. Also makes the claim of contributory negligence as a matter of law in that the plaintiff failed to stop his car within the assured clear distance ahead.

It is the theory of counsel for the defendant that the accident happened when plaintiff drove his car at a high rate of speed into the bank of dirt which was some 200 feet north of the corporation line.

Evidence was introduced that the Realty Company in making this sub-grade constructed a ramp of stone and dirt from the end of the pavement. This was done for the purpose of permitting its trucks to reach Asbury Road in the hauling of material on to the improvements then being made, and also so as to permit the public to use the road.

The only witness called by plaintiff who in any way supported the claim of a dangerous situation at the end of the pavement was an uncle of the plaintiff, who visited the scene of the accident the same day it occurred. It was his judgment that the general excavation of the street below Asbury Road as paved was 12 to 15 inches. He said there was dirt against the end of the paving, so that there was not an abrupt drop but that it was very steep. Plaintiff presents no direct evidence that the authorities of the city of Arlington had any knowledge of any dangerous situation at the end of the pavement such as claimed by plaintiff. The plaintiff did call for cross-examination the Service Director of the city of Arlington, but such cross-examination failed to disclose any knowledge on his part that the extended Asbury Road had been brought down to a sub-grade for the purpose of applying the stone ballast and the black top. This witness said that he had been service director for a number of years and daily or weekly made trips over the various

streets within the city limits so as to keep informed as to conditions generally; that he knew that excavations were being made on the streets in the subdivision and at times had driven down Asbury Road as extended from the city limits, but never at a time when the excavation was down below the grade of the city terminus of Asbury Road. He was unable to give testimony as to the day or date when he had driven over this road or the last time he had seen it, but said he knew it was prior to October 5, 1941, which was the date of the accident.

Defendant at the close of plaintiff's testimony interposed motion for a nonsuit or directed verdict, which motion was overruled. At the close of all the testimony the motion was renewed, and at that time the trial court sustained same, dismissed plaintiff's petition and adjudged costs against plaintiff. Motion for new trial was filed, overruled and judgment entered as above. Within due time counsel gave notice of appeal, thus lodging the case in our court.

We do not deem it necessary to discuss or analyze all questions presented touching the claimed erroneous action of the trial court in directing a verdict. We think that the question of want of notice is determinative of the issue. No claim is made that the defendant city of Arlington had anything to do with the claimed dangerous condition. This Asbury Road, at the end of which the accident is claimed to have happened, was in splendid condition. The excavation and condition created, whatever it was, was the act of another agency and not of the city of Arlington. The only theory under which the city could be held liable would be that the situation was such that the traveler passing along the highway and exercising ordinary care, would be subjected to such imminent danger that it would require a barrier to make the highway safe. **Village v. Bilbow, et, 81 Oh. St., 263, Syl. 2.**

There is no obligation upon the part of the city to guard its city boundaries so as to know that an outside agency does not create dangerous conditions outside the city limits, so as to require barriers to make its streets and highways safe for travel. If such condition exists and the city knows of it, then it is obligated to take such steps as will protect the traveling public.

The notice to the city may be actual or constructive. It is constructive when the condition existed for a sufficient length of time so that the public officials in the exercise of supervisory control over the streets and alleys, should know of the situation.

Counsel for plaintiff urges that since the defendant knew that the Realty Company was making excavations on its streets in the subdivision adjacent to the north boundary line, that thereby it

# 168

would have knowledge of whatever was done by the Realty Company. We do not find this to be the law. The city authorities would not be under obligation to anticipate that the Realty Company in performing its work would do so in a negligent manner, or construct a dangerous pitfall at the end of a street.

Plaintiff's evidence fails to show any claimed dangerous condition except on the Sunday afternoon following the accident, but no evidence as to how long this condition existed.

Defendant called as a witness one Frank Sayers, a graduate engineer and surveyor connected with the Realty Company and in charge of its construction work in the subdivision. He says that the sub-grade on Asbury Road was completed on or about the 25th of September, 1941, and that during the time they were excavating up to the end of the pavement at the corporation line, a barrier was placed across Asbury Street. This excavation took only a few hours after which a ramp was made of stone so as to make a gradual decline from the end of the pavement to the dirt road below. The sub-grade was 8 inches below the top of Asbury Road, as constructed within the city limits. This was a period of ten days before the accident. If a jury would be permitted to indulge the presumption that the condition that the uncle of plaintiff testified about as existing on the Sunday afternoon following the accident, was substantially the same as the condition existing on September 25, when the Realty Company had completed this ramp, then there might be a question for the determination of the issue as to whether or not the city would have constructive notice.

All the direct evidence we have on the subject is that on September 25th the north end of Asbury paved road was adequately protected through a constructed ramp.

When, if at all, did this ramp become out of condition so as to create conditions testified to by plaintiff's uncle? The only answer is that the record fails to disclose.

Arriving at the conclusion as we do, that the defendant city had no knowledge, either direct or constructive, of any dangerous condition at the northerly end of the paving on Asbury Road, we are constrained to the view that the trial court acted correctly in ordering a nonsuit and entering judgment for the defendant.

The judgment of the lower court will be affirmed and costs in this court adjudged against the appellant.

GEIGER, P. J., and HORNBECK, J., concur.